IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jeanine Gourdine,<br><br>              Plaintiff,<br><br>vs.<br><br>Redstone Modern Dentistry and<br>Pacific Dental Services,<br><br>              Defendants. | C/A No.: 0:21-2656-MGL-SVH<br><br><br><br>REPORT AND<br>RECOMMENDATION |

In this employment discrimination case, Jeanine Gourdine ("Plaintiff") sues Redstone Modern Dentistry ("Redstone") and Pacific Dental Services ("Pacific") (collectively "Defendants"), asserting claims for racial discrimination and harassment, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and a state law for negligent supervision.

This matter comes before the court on Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6), and in the alternative, to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.* and Fed. R. Civ. P. 12(b)(3). *See* ECF No. 6. The motion having been fully briefed [ECF Nos. 7, 12, 13], it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned

pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(g) (D.S.C.). Because the motion is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district court grant Defendants' motion to compel arbitration pursuant to Fed. R. Civ. P. 12(b)(3), which would render moot Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6).[1]

I.  Factual and Procedural Background

Plaintiff alleges she is an African-American female who was employed as a dentist by Defendants beginning in late November 2019. [ECF No. 1-1 at 6, 8]. She maintains she entered into a Dentist Employment Agreement ("DEA") with Defendants and complied with its provisions. *Id.* at 6.

Plaintiff alleges multiple causes of action against Defendants as related to her treatment by the office manager at her work site and Defendants' failure to remove or otherwise reprimand the office manager, despite Plaintiff's multiple complaints. *See generally* ECF No. 1-1.

On July 6, 2021, Plaintiff filed a complaint against Defendants in the Lancaster County Court of Common Pleas. [ECF No. 1-1]. Defendants removed

---

[1] Because the arbitration agreement is to be used to resolve all disputes, it is unnecessary for the court to address Defendants' other defenses.

the case on August 18, 2021. [ECF No. 1]. Defendants subsequently filed their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6), and, in the alternative, to dismiss and compel arbitration. [ECF No. 6].

II. Discussion

   A. Legal Standard

Defendants ask the court to compel arbitration under Section 4 of the FAA, which provides, in part, that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Section 2 of the FAA states that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration . . . [and] any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25–26 (1983). Although federal law governs the arbitrability of disputes, ordinary state-law principles resolve issues regarding the formation of contracts. *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005).

"In the Fourth Circuit, a litigant can compel arbitration under the FAA if she can demonstrate '(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute.'" *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (citing *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991); *see also Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 937–38 (4th Cir. 1999) (employing two-part inquiry to ensure the dispute is arbitrable: (1) whether a valid agreement to arbitrate exists between the parties, and (2) whether the specific dispute is within the scope of the agreement).

B.   Analysis

Defendants urge the court to dismiss Plaintiff's claims and compel arbitration based on the parties' agreement to a "Mutual Binding Arbitration Agreement" ("MBAA"). [ECF No. 7 at 2, 19]. They maintain that, pursuant to the MBAA, the parties were to arbitrate "all disputes (except as otherwise expressly noted herein) that may arise out of the employment context" including claims pursuant to Title VII. *Id.* They argue the court should compel arbitration as: (1) there is a dispute between the parties; (2) Plaintiff accepted

4

an employment agreement that includes an arbitration provision that covers the parties' dispute; (3) the transaction between the parties relates to interstate commerce; and (4) Plaintiff has failed, neglected, or refused to arbitrate her dispute with them. *Id.* at 20–23.

Plaintiff maintains she "entered into an employment agreement with Defendants." [ECF No. 1-1 at 6]. The docket reflects a copy of the DEA dated November 21, 2019, and Docusigned by Plaintiff and Redstone's President Alex R. Sharifian, D.D.S. ("Sharifian"). [ECF No. 7-1]. The DEA specifies "Redstone Modern Dentistry" as "Employer" and Jeanine A. Gourdine, D.M.D., as "Dentist."[2] The DEA references and incorporates the MBAA. *See id.* at 5, 6.

The MBAA, dated November 21, 2019, and Docusigned by Plaintiff and Sharifian, provides as follows: "You, the undersigned Dentist, agree and acknowledge that you and the Employer will utilize binding arbitration to resolve all disputes (except as expressly noted herein) that may arise out of the

---

[2] Although the DEA specifies Redstone as "Employer," it indicates Pacific is an affiliate of Redstone that may enforce the terms of the contract. *See* ECF No. 7-1 at 3–4 (providing "Employer is engaged in the business of offering dental services to Employer's patients; Employer has contracted with Indian Land Dental Services ("Service Company"), of which PDS South Carolina Dental Support, LLC ("Regional Entity") is the Managing Partner, for Service Company to provide business support services to Employer. Pacific Dental Services, LLC ("PDS") is the controlling member of the Regional Entity."); *see also* ECF No. 7-1 at 5–6 (providing "Employer may assign this Agreement in whole or in part to any subsidiary or affiliate thereof or any successor to Employer (whether by merger, sale of equity or assets or otherwise).").

employment context." [ECF No. 7-1 at 10].

It further specifies:

You and the Employer expressly agree that this agreement shall be construed and interpreted, and its validity and enforceability determined, in accordance with the Federal Arbitration Act. You and the Employer agree that this agreement evidences a transaction involving interstate commerce and that the Employer is engaged in transactions involving interstate commerce.

*Id.*

It provides:

To the extent permitted by applicable law (except as expressly provided herein), the arbitration procedures stated below shall constitute the sole and exclusive method for the resolution of any claim between you and the Employer arising out of "or related to" the employment relationship. Except as expressly provided herein, you and the Employer EXPRESSLY WAIVE the right, if any, to have such matter heard by a court or a jury and EXPRESSLY WAIVE the right, if any, for any claim to be brought, heard, decided, or arbitrated in the form of a class or collective action.

*Id.*

Defendants, as the parties seeking to enforce the MBAA, "bear[] the initial burden of persuading this court that the parties entered into an enforceable arbitration agreement"; if such a showing is made, "the burden shifts to the plaintiff to show that even though there was some written contract, [she] did not actually agree to it—because the signature was forged, the terms of the contract were misrepresented, or some other reason evincing lack of true agreement." *Gordon v. TBC Retail Grp., Inc.*, C/A No. 2:14-03365-

6

DCN, 2016 WL 4247738, at *5 (D.S.C. Aug. 11, 2016) (citations omitted).

Here, Defendants have met their burden by presenting evidence that creates a rebuttable presumption that Plaintiff entered into an agreement compelling arbitration under the FAA. The record reflects the presence of a dispute between the parties, as Plaintiff alleges Defendants violated her rights under Title VII and Section 1981 and negligently supervised their office manager. [ECF No. 1-1]. Defendants have produced a written agreement with an arbitration provision that covers the dispute, as the MBAA specifies that "[i]ncluded within the scope of this agreement are all disputes (not expressly excluded below), whether such claims are based on the Civil Rights Act of 1866 ("Section 1981"); Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 . . . or any other applicable common law, and/or any local, state or federal statute or regulation." [ECF No. 7-1 at 10]. They have provided evidence in the form of Plaintiff's signature on the DEA and MBAA, reflecting her agreement to the specified terms. *Id.* at 6, 12. The transaction appears to be related to interstate commerce, as the MBAA states it "evidences a transaction involving interstate commerce and that the Employer is engaged in transactions involving interstate commerce." *Id.* at 10. Finally, Plaintiff's failure, neglect, or refusal to arbitrate the dispute is reflected by her filing of the case in the Lancaster County Court of Common Pleas and her demand for

a jury trial. *See* ECF No. 1-1.

Plaintiff admits she signed the DEA, but claims the MBAA was not explained and she did not receive a copy of it. [ECF No. 12 at 2, 16 and ECF No. 12-1 at 1]. She maintains the MBAA fails to set forth a procedure for implementing the arbitration, specify who is responsible for payment, or indicate with whom the arbitration request should be filed. [ECF No. 12 at 16]. She contends there is no contractual basis for the MBAA. *Id.* She notes the MBAA specifies it is not a contract and does not alter her employment at-will. *Id.* She claims the MBAA is one-sided, unconscionable, and unenforceable under South Carolina law. *Id.* She concedes the parties have a dispute, but argues the MBAA does not cover the dispute, the parties' transactions do not relate to interstate commerce, and she did not neglect or refuse to arbitrate, as she was unaware of the Arbitration Clause. *Id.* at 18–19.

The formation of a binding contract requires "the parties [to] have a meeting of the minds with regard 'to all essential and material terms of the agreement.'" *Vessel v. DPS Associates of Charleston, Inc.*, 148 F.3d 407, 410 (4th Cir. 1998). General principles of state contract law determine whether an agreement exists. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 685 (1996) ("'[S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, or enforceability of

contracts generally'") (quoting *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987) (alteration in original). In South Carolina, "[t]he necessary elements of a contract are an offer, acceptance, and valuable consideration." *Sauner v. Pub. Serv. Auth. Of S.C.*, 581 S.E.2d 161, 166 (S.C. 2003).

The evidence indicates Plaintiff signed both the DEA and the MBAA. Plaintiff claims she was provided a contract to review that failed to include the MBAA. *See* ECF No. 12-1 at 1. Although Plaintiff states in her affidavit that she attached the agreement she had available to her as Exhibit A, she failed to attach any exhibits to her affidavit. *See id.* She does not claim she was sent a different contract to review than the DEA. *See id.* She admits she signed a contract and does not dispute having signed the DEA, which bears her signature. *See id.* The DEA references the MBAA as being incorporated therein, placing Plaintiff on notice of its existence, even if she did not receive it when she received the DEA for review. *See* ECF No. 7-1 at 6. Plaintiff also does not dispute that she signed the MBAA through DocuSign when she signed the DEA, and her signatures appear on both the DEA and the MBAA. *See* ECF Nos. 7-1 at 6, 12 and 12-1 at 1. The MBAA expressly provides:

> I acknowledge that I have received and read or have had the opportunity to read this arbitration agreement. I understand that this arbitration agreement requires that disputes that involve matters subject to the agreement be submitted to mediation or arbitration pursuant to the arbitration agreement rather than to a judge and jury in court. I further acknowledge that nothing in

>this agreement alters the at-will status of my employment with Employer.

[ECF No. 7-1 at 12].

While Plaintiff maintains she received no physical copy of the MBAA and that it was not explained to her, she does not indicate she had no opportunity to review it when she signed it through DocuSign. *See* ECF No. 12-1 at 1. In the absence of any evidence to the contrary, the court presumes Plaintiff understood she was accepting the terms of the DEA and the MBAA through her action in having signed both, and no explanation other than that available to her through a reading of the documents was required. *See Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 306 (4th Cir. 2001) (stating "an elementary principle of contract law is that a party signing a written contract has a duty to inform himself of its contents before executing it, . . . and in the absence of fraud or overreaching he will not be allowed to impeach the effect of the instrument by showing that he was ignorant of its contents or failed to read it . . . That the appellees did not make themselves aware of the arbitration clause and disclosure is irrelevant." (internal marks and citation omitted); *see also Towles v. United HealthCare Corp.*, 524 S.E.2d 839, 845 (S.C. Ct. App. 1999) (providing an employee "cannot legitimately claim [the employer] failed to provide actual notice of the arbitration provisions because the law does not impose a duty to explain a document's contents to an individual when the

10

individual can learn the contents from simply reading the document").

Contrary to Plaintiff's argument, the MBAA includes terms as to its operative procedure and payment for arbitration. It provides:

> Both you and the Employer agree that any claim, dispute, and/or controversy that either you may have against the Employer . . . or the Employer may have against you, arising from, related to, or having any relationship or connection whatsoever with your employment by, or other association with the Employer, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act (9 U.S.C. § 1, et seq.), and following the procedures of the applicable state arbitration act, if any.

[ECF No 7-1 at 10]. Thus, pursuant to the terms of the MBAA, provisions of South Carolina's Uniform Arbitration Act fill any voids as to procedure. *See* S.C. Code Ann. § 15-48-10, *et seq.* The MBAA specifies "the arbitrator selected shall be a qualified neutral arbitrator on whom the parties mutually agree, and shall be subject to disqualification on the same grounds as would apply to a judge of such court." *Id.* at 11. It further indicates: "The Employer shall bear the arbitration costs." *Id.* Given these provisions, the MBAA is sufficiently specific to be enforceable.

Plaintiff's contractual challenges to the MBAA are unsupported. Although she maintains there is no contractual basis for the MBAA, the undersigned notes the MBAA was referenced multiple times in the DEA and incorporated therein. *See* ECF No. 7-1 at 5 ("9.3 **Mutual Binding Arbitration.**

Dentist and Employer agree that any dispute, claim, or controversy that may arise under or relate to the employment relationship (including the validity, scope and enforceability of this arbitration provision) shall be solely and finally decided by binding arbitration. The terms of such binding arbitration are contained within the Mutual Binding Arbitration Agreement circulated herewith."); ECF No. 7-1 at 6 ("9.7 **Integration.** This Agreement, any exhibit referred to in this Agreement, and any related Addendum(s), and the Mutual Binding Arbitration Agreement circulated herewith constitute the final, complete, and exclusive statement of the terms of the agreement between the parties pertaining to the subject matter of this Agreement and supersede all prior and contemporaneous understandings or agreements of the parties."). Plaintiff does not dispute that she entered into the DEA and she recognizes it as a contract. *See generally* ECF No. 12-1.

Plaintiff points to language in both the DEA and the MBAA specifying: "THIS IS NOT AN EMPLOYMENT CONTRACT FOR A GUARANTEED TERM AND DOES NOT ALTER THE EMPLOYEE'S STATUS AS AN AT-WILL EMPLOYEE." *See* ECF No. 7-1 at 2, 10. The DEA further provides:

> 3.1 **Termination of Employment.** Dentist's employment under this Agreement shall continue in effect until terminated by either party as provided in this Section 3. Dentist hereby acknowledges that this Agreement is for no specific term and may be terminated at the will of either party at any time, with or without prior notice, for any reason or for no reason.

[ECF No. 7-1 at 2]. This language suggests either party was permitted to terminate the employment relationship at-will. Contracts containing at-will termination provisions are presumed valid under South Carolina law. *See Cape v. Greenville County School Dist.*, 618 S.E.2d 881, 883 (S.C. 2005) ("An employment contract for an indefinite term is presumptively terminable at will, while a contract for a definite term is presumptively terminable only upon just cause. These are mere presumptions, however, which the parties can alter by express contract provisions."). Thus, Plaintiff was bound by the agreed-upon terms of the contract, despite the provision for at-will termination.

Although Plaintiff claims the Arbitration Clause is one-sided, unconscionable, and unenforceable under South Carolina law, she presents no persuasive reasons to support her arguments. "Unconscionability has been recognized as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms which are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Fanning v. Fritz's Pontiac-Cadillac-Buick, Inc.*, 472 S.E.2d 242, 245 (S.C. 1996). "In determining whether there is an absence of meaningful choice, courts should consider numerous factors, including the relative disparity of bargaining power between the parties, the nature of the plaintiff's injuries, the relative sophistication of the parties, and the conspicuousness of

the arbitration provision." *Low Country Rural Health Educ. v. Greenway Medical Technologies, Inc.*, C/A No. 9:14-874-DCN, 2014 WL 5771850 (D.S.C. Nov. 5, 2014) (citing *Simpson v. MSA of Myrtle Beach, Inc.*, 644 S.E.2d 663, 699 (S.C. 2007). "The Fourth Circuit instructs courts to focus on whether the arbitration clause is geared towards achieving an unbiased decision by a neutral decision maker." *Id.* (citing *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999)).

Plaintiff admits she is a dentist, which suggests she was a well-educated and sophisticated party capable of reading and understanding the terms of the MBAA. She admits she entered into the DEA, which was not one-sided, as it contained mutually-beneficial terms for employment and compensation. *See generally* ECF No. 7-1. Plaintiff was not employed by Redstone at the time she entered into the agreement and was free to accept or reject the terms of the contract. The MBAA was presented conspicuously, as it was incorporated into the DEA, referenced twice therein, and set forth as a separate document Plaintiff signed. The MBAA appears unbiased, as it allows selection of an arbitrator based on mutual agreement of the parties and imposes sole responsibility for payment of arbitration expenses on Redstone. *See* ECF No. 7-1 at 11. Therefore, the MBAA is not one-sided, unconscionable, or unenforceable.

Although Plaintiff claims the parties' transactions do not involve interstate commerce, the DEA and MBAA reflect the contrary. The DEA specifies Plaintiff's address as being in South Carolina and Redstone's address as being in California. *See* ECF No. 7-1 at 6. Because Plaintiff was a dentist located in South Carolina and her employer Redstone was located in California, the transaction involved interstate commerce. *See McCollum v. Tenet Healthcare Corp.*, C/A No. 0:06-1934-JFA-BM, 2006 WL 3373096, at *3 (D.S.C. Nov. 20, 2006) (finding the agreement involved interstate commerce where the plaintiff was employed and paid by an out-of-state company that also provided treatment to patients in South Carolina). The MBAA specifies: "You and the Employer agree that this agreement evidences a transaction involving interstate commerce and that the Employer is engaged in transactions involving interstate commerce." *Id.* at 10. Thus, the parties agreed the transaction involved interstate commerce.

Plaintiff's claims that she was unaware of the MBAA and that it is inapplicable to the dispute are unavailing. As explained above, Plaintiff is a sophisticated party and accepted the contract containing the MBAA. As also explained above, her claims allege violations of her rights under Title VII and Section 1981 and negligent supervision under South Carolina law—all claims specifically contemplated and designated as subject to the MBAA. *See* ECF No.

15

7-1 at 10.

Plaintiff presents no valid argument against the presumptive operation of the MBAA, and it is appropriate for this court dismiss the case in favor of arbitration under the FAA.

III.   Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends the district judge grant Defendants' motion [ECF No. 6], compel arbitration, and dismiss the case. If the district judge accepts this recommendation, Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(1) and (6) will be rendered moot.

IT IS SO RECOMMENDED.

October 21, 2021                                Shiva V. Hodges
Columbia, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).